JOSEPH et al. v. FARNSWORTH RADIO & TELEVISION CORP. et al.

United States District Court
S. D. New York.
July 25, 1951.

Barney Rosenstein and Leo Praeger, New York City (Bernard S. Kanton, New York City, of counsel), for plaintiffs.

Davis, Polk, Wardwell, Sunderland & Kiendl, New York City (S. Hazard Gillespie, Jr., and Francis W. Phillips, both of New York City, of counsel), for defendants Paul H. Hartman, Philo T. Farnsworth, George Everson, Jesse B. McCargar and F. A. R. Liquidating Corp., sued herein as "Farnsworth Radio and Television Corp."

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendant Lloyd S. Gilmour.

SUGARMAN, District Judge.

Barnet Joseph and Max Felshin, "on behalf of themselves and in a representative capacity on behalf of all former and present stockholders of the defendant, Farnsworth Radio and Television Corp.", commenced an action in this Court against Farnsworth Radio and Television Corp., Jesse B. McCargar, Edwin M. Martin, Lloyd S. Gilmour, Philo T. Farnsworth, George Everson and Paul H. Hartman.

As I read the complaint, it alleges, all upon information and belief except the first paragraph, that:

1st.—The action is brought under 15 U. S.C.A. § 78j(b) and Rule X–10(b) (5) of the Securities and Exchange Commission;

2nd.—At the times involved, the individual defendants were directors and/or officers of the corporate defendant;

3rd.—The corporate defendant is a Delaware corporation; with its principal place of business in this district;

4th.—The individual defendants, for themselves and others, between March 19th, 1948 and October 30th, 1948, sold certain enumerated shares of the stock of the corporate defendant;

5th.—The plaintiff, Felshin, on November 12, 1948 bought 100 shares of the corporate defendant's stock at 5⅝ and the plaintiff, Joseph, on December 13, 1948 bought 700 shares of the corporate defendant's stock at 7⅞;

6th.—The individual defendants, in connection with their *sales* (emphasis supplied) of stock enumerated in paragraph 4th, using interstate commerce and the mails, made false statements of material facts and omitted to state material facts necessary to make the statements made not misleading and employed devices, schemes and artifices to defraud and engaged in acts, practices and courses of business which were a fraud and deceit upon Joseph and Felshin and "all others of said class in connection with the purchase and sale of the common stock of" the corporate defendant in that:

(a) (1) False statements were made as to the corporate defendant's inventory value, financial condition and net losses;

(2) Statements of material fact were omitted that the corporate defendant had suffered substantial losses during the six month period ending October 31, 1948 and that its inventory had become obsolete and substantially less valuable;

(b) All defendants, on November 12th, 1948, issued a financial statement of the corporate defendant falsely reflecting the latter's financial condition as of October 31, 1948 and earnings for the six month period prior thereto;

(c) The individual defendants knew or could have ascertained and should have known that the statement of the corporate defendant's condition as of October 31, 1948 was materially false and misleading;

(d) The defendants, in publishing the said financial statement, knew that "persons such as the plaintiffs and others similarly situated" would rely upon the truth and accuracy thereof, in purchasing the corporate defendant's stock;

(e) The individual defendants, as insiders, with full realization prior to the first sale by them of the corporate defendant's stock, obtained and used information as to the real condition of the corporate defendant to sell their stock in it, at prices in excess of that which would have been obtainable had the true financial condition of the corporate defendant been disclosed and in excess of prices that were obtainable when those facts were ultimately revealed;

7th.—Joseph and Felshin did not know of the facts set forth in paragraph "Seventh" [sic—"Sixth"] when they purchased their stock;

8th.—Joseph and Felshin could have and first learned of the true state of corporate defendant's affairs on January 12, 1949 at which time their stock in corporate defendant had dropped to a market value of 4½;

9th.—(a) Joseph sold his 700 shares on January 14, 1949 at 5.

(b) Felshin exchanged his 100 shares for 12 shares of International Telephone and Telegraph Corp.;

10th.—Joseph claims $2,187.08 and Felshin claims $473 damages;

11th.—Joseph and Felshin sue as representatives of a class consisting of all persons who acquired the common stock of the corporate defendant between March 1, 1948 and January 14, 1949, which class exceeds 500 persons, all of whom are jointly and commonly interested in this action and whose rights and those of Joseph and Felshin are identical and involve common questions of law and fact;

12th.—Joseph and Felshin, in addition to their damages alleged in paragraph 10th, seek "exemplary damages in such amounts" as the Court may award.

The complaint concludes with a prayer by Joseph and Felshin for judgment (a) against all defendants for the damages set forth in paragraph 10th and "exemplary damages" under paragraph 12th; (b) against all defendants for the damages established by any intervenor of the class; (c) costs, expenses and attorneys' fees.

Service of the summons and complaint having been effected upon all defendants except Edwin M. Martin, a threefold attack is launched upon the complaint by (1) the corporate defendant, (2) the individual defendant Lloyd S. Gilmour and (3) the remaining four individual defendants who were served. The movants severally contend that the complaint fails to state a claim upon which relief can be granted and thus should be dismissed under F.R. Civ.P. 12(b), subd. (6), 28 U.S.C.A.

On motions such as these, the allegations of the complaint must be taken as true and the complaint must be construed in the light most favorable to the plaintiffs. Abel v. Munro, 2 Cir., 1940, 110 F.2d 647. Furthermore the complaint need but state a claim upon which relief can be granted and if it does so, even absent the statement of facts sufficient to constitute a cause of action, it will survive a motion to dismiss under F.R. Civ. P. 12(b) (6). Dioguardi v. Durning, 2 Cir., 1944, 139 F.2d 774. Nor should a complaint fall before such an assault unless it appears to a certainty that plaintiffs are entitled to no relief under any state of facts that might be proven in support of their claims. Mullen v. Fitz Simons & Connell Dredge & Dock Co., 7 Cir., 1948, 172 F.2d 601, certiorari denied 337 U.S. 959, 69 S.Ct. 1534, 93 L.Ed. 1758.

Appraised in the light of these proscriptions, I am persuaded that the instant complaint fails to state a claim upon which relief can be granted.

Prefatorily, attention is focused on the "class" aspect of the complaint. The plaintiffs set up a class composed of all who purchased stock of the corporate defendant between March 1, 1948 and January 14, 1949. From the face of the complaint there are obviously groupings of such purchasers within that period who do not share with Joseph and Felshin the common questions of law or fact required by F.R.Civ.P. 23(a) (3). What was said on this question in Speed v. Transamerica Corporation, D.C.Del. 1945, 5 F.R.D. 56 is here apposite. It remains then, under the Speed case, to test this complaint as one solely of Joseph and Felshin against the defendants named.

Obviously, the jurisdictional amount lacking, this suit must stand or fall on the ascribed basis of 15 U.S.C.A. § 78(j) (b) and Securities and Exchange Commission Rule X–10(b) (5). The former provides:

§ 78j. "Manipulative and deceptive devices

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

"(a) * * *

"(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative * * * device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

The latter provides:

(17 CFR)

§ 240.10b–5 "Employment of manipulative and deceptive devices. It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

"(a) To employ any device, scheme, or artifice to defraud.

"(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

"(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

The decisions of the Courts (except Fischman v. Raytheon Mfg. Co., 2 Cir., 1951, 188 F.2d 783 discussed *infra*) and the rulings of the Commission to which this Court's attention has been directed, seem to supply no guidepost in coping with the apparently novel situation here posed. For, in those instances, insiders were purchasers, in the main direct, who garnered their stock by fraudulent representations to or concealment from their unsuspecting vendors. The case at bar offers the reverse.

Stripped of its trappings, this complaint asserts the right to a private recovery by Joseph and Felshin from the defendants, of the difference between that which the former paid for their stock in the corporate defendant and that which they would have paid had the latter not remained mute between March 19th and October 30th, 1948 when the individual defendants were unloading their own holdings in the company because they knew of its precarious plight.

Felshin acquired his 100 shares on November 12th, 1948 and Joseph his 700 shares on December 13th, 1948. Assuming both of these acquisitions to have occurred after the issuance by the defendants of the fraudulent financial statement of the corporate defendant on November 12th, 1948 (as of October 31st, 1948) the complaint avoids any assertion that Felshin and Joseph relied on that statement. The most that is ventured is the allegation that the financial statement was issued by defendants with the full knowledge that "persons

*such as the plaintiffs* and others similarly situated would rely upon such information in purchasing shares of stock of defendant Farnsworth * * *". Thus, the fraudulent statement and its ultimate correction on January 12th, 1949 become merely probative of the *scienter* of the individual defendants.

The issue is narrowed to merely this: May A, who purchased stock of the F Corporation on November 12th and B, who likewise purchased stock of the same corporation on December 13th, each on a national stock exchange and each at a price higher than he would have paid therefor had he known the true financial condition of F, recover from C, D and E, the directors and officers of the corporation, the difference between that paid and that which would have been paid had C, D and E disclosed, between the previous March 19th and October 30th when they were unloading their own stock in F, that F was in a straitened financial condition?

Unless that liability may be spelled out of the statute and rule above quoted I cannot conceive of a basis for its existence. And, with reluctance, I fail to find its basis even in the statute or rule quoted.

▋ As to the corporate defendant, there is no allegation of its involvement in either a purchase or sale of stock and, this indispensable ingredient lacking, its motion to dismiss the complaint as against it must be and is granted without leave to plead over.

▋▋ As to the remaining five individual defendant-movants, they, admittedly for the purpose of these motions, sold on the exchange between March 19th and October 30th, 1948 stock in the corporate defendant and by their concealment realized bloated prices. Their silence cannot be deemed to be the employment of "any device, scheme or artifice" contemplated by the interdiction of Rule X–10(b) (5) (a) of the Commission. Nor did they, at the time they sold their stock, violate (b) of that rule by omitting "to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading" for, the statement was not made until November 12th, 1948—twelve days after the last sale by any of them. At most, they engaged in the type of "act, practice, or course of business" which operated as a fraud or deceit in connection with their sale of the corporate defendant's stock, forbidden by (c) of the rule. But, fraud upon whom? Felshin and Joseph, who bought their stock on the exchange 13 and 44 days respectively after the last sale by any of the individual defendants?

▋ Whatever may be the rights of those who bought the individual defendants' stock between March 19th and October 30th, 1948 is not before me. Nothing in the history of the Act or the Rule permits the far-reaching effect sought herein by the plaintiffs. A semblance of privity between the vendor and purchaser of the security in connection with which the improper act, practice or course of business was invoked seems to be requisite and it is entirely lacking here. In Fischman v. Raytheon Mfg. Co., supra, Judge Frank intimated as much when he wrote, 188 F. 2d at page 788, "The common stockholders should be permitted to amend (if they can do so) by alleging facts showing that the defendants deliberately used the prospectus or registration statement for the purpose of fraudulently inducing the purchase of common stock sold by the defendants and that, in this fraudulent purpose, the defendants were successful *vis a vis* the common stockholders here." It is obvious from the facts pleaded in the complaint at bar that no such privity between the individual defendants who sold between March 19th and October 30th, 1948 on the one hand and the plaintiffs who bought on November 12th and December 13th, 1948 on the other can be successfully pleaded.

▋ I, of course, express no opinion upon the sufficiency of a complaint alleging reliance by plaintiffs on the November 12th, 1948 statement or the effect of the Act and Rule upon such a pleading, for no such allegation is contained in the complaint before me. This, coupled with the possibility that later sales by the individual defendants may form the basis of privity with these plaintiffs dictates that a fair

opportunity to explore such prospects should be accorded before the plaintiffs' claims are conclusively snuffed out.

The motion by defendant Gilmour and that of defendants McCargar, Farnsworth, Everson and Hartman to dismiss the complaint herein for failure to state a claim upon which relief can be granted pursuant to F.R.Civ. P. 12(b) (6) are severally granted with leave to the plaintiffs to plead anew, not inconsistent herewith, as soon as plaintiffs have taken the depositions of said individual defendants, pursuant to order. Cf. Rejsenhoff v. Colonial Nav. Co., D.C.S.D.N.Y.1940, 35 F.Supp. 577; same case, D.C.S.D.N.Y.1940, 1 F.R.D. 395.

Settle orders on notice.