Howard MILLER, Harry Kirschenbaum, Louis Kirschenbaum and Anne Hiller

v.

BARGAIN CITY, U.S.A., INC., a Pennsylvania corporation et al.

Civ. A. No. 33404.

United States District Court
E. D. Pennsylvania.

April 16, 1964.

scher, Philadelphia, Pa., for defendant Laventhol, Krekstein & Co.

Arnold R. Ginsburg, Philadelphia, Pa., for plaintiffs.

William D. Valente, Mesirov, Gelman Jaffe & Levin, Philadelphia, Pa., for defendants Bargain City, U.S.A., Inc., William H. Sylk, Harry S. Sylk, Leon Blauner, Lawrence G. Horowitz, Michael Criss and Mary T. Kehan.

Louis E. Levinthal, Dilworth, Paxson, Kalish, Kohn & Dilks, Philadephia, Pa., for defendant I. Budd Rockower.

J. B. H. Carter, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for defendants Harold C. Mayer, Jr., Sigmund Wahrsager and Bear, Sterns & Co.

Henry J. Morgan, Blank, Rudenko, Klaus & Rome, Philadelphia, Pa., and A. John May, Jr., Duane, Morris & Heck-

JOSEPH S. LORD, III, District Judge.

This case is now before the court on defendants' motions under Rule 12 to dismiss both counts of plaintiffs' complaint. Plaintiffs allege that defendants violated Section 10(b) of the Securities Exchange Act of 1934, as amended (15 U.S.C. § 78j) (The Act),[1] and Rule 10b–5[2] [adopted by the Securities and Exchange Commission pursuant to authority granted by Congress in 10(b) and 23 (a) of the Act (15 U.S.C. §§ 78j, 78w)]. Plaintiffs base Count I of their action "solely and exclusively" upon Sections 10(b) and 27[3] of the Act.

Count II is against seven of the fourteen defendants named in Count I, and is a common law action for fraud, deceit and conspiracy. The following is a sum-

1. Section 10(b) provides that "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange * * * (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

2. "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, (1) to employ any device, scheme, or artifice to defraud, (2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

3. Section 27, as amended, provides that "The district courts of the United States, the district court of the United States for the District of Columbia, and the United States Courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this title or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this title or the rules and regulations thereunder. Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by this title or rules and regulations thereunder, or to enjoin any violation of such title or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found. Judgments and decrees so rendered shall be subject to review as provided in sections [128 and 240 of the Judicial Code], as amended (U.S.C., title 28, secs. 225 and 347). No costs shall be assessed for or against the Commission in any proceeding under this title brought by or against it in the Supreme Court or such other courts."

mary of the allegations taken from the 46-page, 52-paragraph complaint:

Plaintiffs are stockholders of Bargain City, U.S.A., Inc., (Bargain City) a Pennsylvania corporation, who own an aggregate 5100 shares of Bargain City stock. Between September 26, 1961, and March 22, 1962, plaintiff Howard Miller purchased for himself 4700 shares of Bargain City stock and 400 shares on behalf of the other three plaintiffs. These shares were bought at prices ranging from 12½ to 7⅛, at a total cost to plaintiffs of $54,542.75. Immediately before the commencement of this action Bargain City stock was quoted at ⅜ bid.

Although the specific allegations of defendants' misconduct take up eighteen paragraphs of the complaint, including numerous subdivisions and sub-subdivisions, they all relate to reports and statements filed with the Securities and Exchange Commission required by the Act or by rules and regulations of the Commission. Plaintiffs allege that the reports filed were inaccurate, false, untrue or misleading. Plaintiffs also claim in general terms, in the exact language of Rule 10b–5 that defendants did "(a) employ a device, scheme or artifice to defraud the plaintiffs; and/or (b) make an untrue statement of a material fact or omit to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or (c) engage in an act, practice or course of business which operated or operates or would operate as a fraud or deceit upon the plaintiffs and each of them —all of which was in connection with the purchase by the plaintiffs of 5100 shares of Bargain City's common stock."

Paragraph 39 alleges that all defendants are liable to the plaintiffs " * * * by virtue of a conspiracy with respect to such violations" of Section 10(b) of the Act and Rule 10b–5.

Plaintiffs allege (paragraph 16) that in September, 1961, Miller got a tip from an unnamed broker on Bargain City; that he thereupon consulted Standard & Poor's most recent report on Bargain City from its "Over-the-Counter and Re-gional Exchange Stock Reports"; and that he consulted more detailed financial statements on Bargain City in Standard & Poor's manual of corporation records. Thereafter, relying *inter alia*, upon these statements and reports, Miller purchased the stock over-the-counter.

Plaintiffs leave no doubt that their action is predicated solely on an alleged violation of Section 10(b) of the Act and of Rule 10b–5. Defendants argue that the action is improperly bottomed on Section 10(b) and Rule 10b–5 because: (1) defendants' alleged conduct is specifically covered by Section 18 of the Act, and cannot be brought within Section 10(b); (2) there is no showing that defendants were sellers or that any privity existed as between plaintiffs and defendants.

## COUNT I

On a motion to dismiss, the complaint must be viewed in the light most favorable to plaintiff. Smith-Corona Marchant, Inc. v. American Photocopy Equipment Co., 214 F.Supp. 348 (S.D. N.Y., 1962). The motion should not be granted unless it appears to a certainty that plaintiff would not be entitled to relief under any state of facts which could be proved in support of his claim no matter how likely it may seem that the pleader will be unable to prove his case. *Weinrich v. Retail Credit Co.*, 186 F. Supp. 392 (W.D.Pa., 1960). A motion to dismiss should be approached with caution. It should not be the vehicle for enunciating rules of law in the abstract. Rather, if the factual situation has not crystallized, a court should await the utilization by parties of the discovery tools furnished by the Rules, followed by a motion for summary judgment under Rule 56. If at that time, no genuine issue of a material fact exists, the law will be applied to existing facts and not to a speculative situation that may never arise. Cf. Philco Corporation, et al. v. Radio Corporation of America, et al., 34 F.Supp. 453.

Coming then to defendants' first argument: it is true that the specific conduct

alleged in the complaint would appear to amount to the type of fraud which is covered by Section 18. However, it is also true that the complaint alleges that defendants employed a "device, scheme, or artifice to defraud" and that they engaged in an "act, practice or course of business" which operated as a fraud or deceit. These allegations are certainly broad enough to permit evidence of conduct violative of Rule 10b–5. Discovery may reveal that plaintiffs have evidence of conduct that transcends the specific conduct embraced in Section 18. If so, defendants' first argument will be moot. If not, then will be the time to decide the issue, not now.

■ Now is the time, however, to face defendants' second argument. The complaint shows on its face that plaintiffs bought their stock by over-the-counter purchases. This fact cannot be varied, and it is therefore immutably clear that defendants were not sellers and that there was no privity between the parties. Hence, if an action under Section 10(b) and Rule 10b–5 requires privity, or lies only against a seller, the complaint must be dismissed.

The notion of privity as a prerequisite to an action bottomed on Rule 10b–5 seems to spring from Joseph v. Farnsworth Radio and Television Corp., 99 F. Supp. 701 (S.D.N.Y., 1951), affirmed per curiam, 198 F.2d 883 (C.A.2, 1952). The language of the district court in that case was: " * * * A semblance of privity * * * seems to be requisite * * *." I find it unnecessary to attempt a definition of this, at best, cloudy phrase, for if "a semblance of privity" means "privity" (like "a little bit pregnant"), I reject it. The pattern of legislation in the securities field following 1933 was designed to give the broadest possible protection to investors. See Baird v. Franklin, 141 F. 2d 238 (C.A.2, 1944); Wilko v. Sawn, 346 U.S. 427, 430–431, 74 S.Ct. 182, 98 L.Ed. 168 (1953); Prudential Insurance Co. of America v. Securities and Exchange Commission, 326 F.2d 383 (C.A. 3, 1964); Cooper v. North Jersey Trust Co., et al., 226 F.Supp. 972, (S.D.N.Y.,

1964). Neither Section 10(b) nor Rule 10b–5 gives a private right of action. Rosenberg v. Globe Aircraft Corporation, 80 F.Supp. 123 (E.D.Pa., 1948). Rather, the right of action derives from common law tort principles which impose liability for the violation of a statute designed to prevent a particular type of harm. Kardon v. National Gypsum Co., 69 F.Supp. 512 (E.D.Pa., 1946); McClure v. Borne Chemical Company, 292 F.2d 824, 836 (C.A.3, 1961). In Kardon, recovery was allowed on the basis of the principle set forth in Rest., Torts, § 286. That section reads:

"The violation of a legislative enactment by doing a prohibited act, or by failing to do a required act, makes the actor liable for an invasion of an interest of another if:

"(a) the intent of the enactment is exclusively or in part to protect an interest of the other as an individual; and,

"(b) the interest invaded is one which the enactment is intended to protect; and,

"(c) where the enactment is intended to protect an interest from a particular hazard, the invasion of the interests results from that hazard; and,

"(d) the violation is a legal cause of the invasion, and the other has not so conducted himself as to disable himself from maintaining an action."

It will be seen that "privity", as such, is not a prerequisite to a right of action under that Section. In my judgment, it would be an unwarranted constriction of the broad protection contemplated by the federal scheme of securities legislation to engraft upon that scheme a requirement that is neither a part of the statute nor a part of the governing common law tort principles.

In Brown v. Bullock, 194 F.Supp. 207 (S.D.N.Y., 1961), the court said, at pp. 229–230:

" * * * Privity of contract between the plaintiffs and the defend-

ants is not a fixed condition precedent to the implication of a private remedy for a statutory violation that injured the plaintiffs, members of the protected class. In that situation, privity is not an ultimate or operative fact. It is an evidentiary fact to be considered in conjunction with other material facts in determining whether the relationship (such as it is) between the plaintiffs and the defendants and the nature of the particular acts and transactions involve the duty created by the statute. Loss, Securities Regulation (1951) 1064; (1955 Supplement) 371–372. Cf. Joseph v. Farnsworth Radio & Television Corp., D.C.S.D. N.Y.1951, 99 F.Supp. 701, affirmed 2 Cir., 1952, 198 F.2d 883, per curiam, Frank, J. dissenting. * * * "

For other comments on the unsoundness of requiring privity, see: Cochran v. Channing Corporation, 211 F.Supp. 239 (S.D.N.Y., 1962); Texas Continental Life Ins. Co. v. Bankers Bond Co., 187 F.Supp. 14 (W.D.Ky.1960); Cooper v. North Jersey Trust Co., et al., 226 F. Supp. 972 (S.D.N.Y., 1964); Loss, Securities Regulation (2d ed. 1961) 1767–1769; Leech, Transactions in Corporate Control, 104 U. of Pa.L.Rev. 725, 766–768 (1956); Holloway, Securities and Exchange Commission Rule X–10b–5: Guided Missile or Flying Saucer?, 32 Texas L.Rev. 197, 207–209 (1953); and Comment, 4 Stanford L.Rev. 308 (1952).

█ Nor is a defrauded buyer or seller limited to an action against the other party to the transaction. In New Park Mining Company v. Cranmer, 225 F. Supp. 261 (S.D.N.Y., 1963), the court said, at page 266:

" * * * A purchaser or seller of stock is not limited under Section 10(b) and Rule 10b–5 to an action against the other party to the purchase or sale; he can sue a third person if in connection with the purchase or sale that person defrauded him. * * * "

See also, Comment, 59 Yale L.J. 1120 (1950) at page 1137.

█ Section 10(b) and Rule 10b–5 forbid certain acts "in connection with" a purchase or sale. Plaintiffs have alleged that the defendants' misconduct was "in connection with" their purchase. It would be premature to attempt here to determine the nature [4] or extent of the connection required by the Act or its sufficiency in this case, for again the facts are not crystallized. Further development of the facts may well show just what the "connection" was. Upon a proper motion then, if there are no genuine issues, the matter can be decided in factual context rather than in a factual vacuum.

The motion to dismiss Count I will be denied.

### COUNT II

In Count II of the complaint, plaintiffs have incorporated by reference all of the allegations of paragraphs 27 to 37, inclusive, of Count I. These paragraphs recount in detail all of the alleged wrongdoings of defendants in connection with the filing of forms and reports required by statute and the rules of the Securities and Exchange Commission. Count I makes these alleged wrongdoings the basis of an action for violation of Section 10(b) and Rule 10b–5. Count II makes them the basis of a common law action. Defendants move to dismiss this count for failure to state a cause of action.

The Rest., Torts, § 536, states:

"If a statute requires a report showing the maker's financial position and business activities

"(a) to be published by the maker, or

"(b) to be made to a public official who is required or permitted to publish it or to hold it open to public inspection while in his custody,

one who makes a fraudulent representation in such a report is subject to liability to those for whose infor-

---

4. Cf. Cooper v. North Jersey Trust Co., et al., 226 F.Supp. 972 (S.D.N.Y., 1964).

mation the report is required for harm suffered because of reliance on the representation in a transaction for guidance in which the report is required to be made available."

Comment b to that Section makes it clear that it is intended to protect the public buyer of corporate stock:

"A statute which requires corporations to make reports of their financial position which are to be published or open to public inspection is generally regarded as one enacted for the purpose of making the information available to those to whom knowledge of the financial position of the corporation in question is important in determining their course of action in any type of transaction with the corporation in question. Thus, a financial statement required to be made by a bank or insurance company is regarded as being made, not only for the information of those who are considering the making of deposits in the bank or taking out insurance, but also for the information of persons considering the purchase of shares or lending money to the bank or insurance company."

While § 536 has not yet been cited with approval by Pennsylvania courts, in Gillespie, et al. v. Hunt, et al., 276 Pa. 119, at page 127, 119 A. 815, at page 817 (1923), the court said:

" 'It is well settled that where a false statement is made to the public at large for the purpose of influencing the action of any individual to whom it may be communicated, any person acting in reliance upon it and thereby sustaining injury may maintain an action against the person who made it, and that in such case it is not necessary that there should be an intent to defraud any particular person; but in such cases the representation must of course have been intended for the public': 20 Cyc. 81, 82."

In Gerr v. Emrick, 283 F.2d 293 (C.A. 3, 1960), the court said, at page 294:

" * * * The issue is novel in the sense that the precise question has never been decided by the appellate courts of Pennsylvania and that being so we are required to consider such approach to the problem as may be indicated by the Pennsylvania cases in the general field and to resort to general applicable principles to reach a conclusion consistent with Pennsylvania law. In sum, it is incumbent on us to make our own determination of what the Pennsylvania Supreme Court would probably rule in a similar case. * * * "

With Gillespie as a guide, and with the known "friendliness of the Pennsylvania courts to the Restatement of Torts" [Seaboard Surety Co. v. Permacrete Construction Corp., 221 F.2d 366, 372 (C.A.3, 1955)] I have no doubt that § 536 will be held to express the law of Pennsylvania.

Plaintiffs have alleged that they relied upon the defendants' report as reflected in Standard & Poor; that the alleged wrongdoing was in connection with their purchase; and that it was an "intentional fraud upon plaintiffs" (paragraph 49). These allegations, if proven, would establish fraudulent representations made in a report required by statute under the precise terms of § 536, and spell out a cause of action under that Section.

Defendants have argued that some sort of privity must exist between plaintiffs and defendants to impose liability for negligence. Landell v. Lybrand, et al., 264 Pa. 406, 107 A. 783, 8 A.L.R. 461 (1919); Renn, et al., v. Provident Trust Co., 328 Pa. 481, 196 A. 8 (1938); Prosser on Torts, 2d ed., pp. 543–544. They argue further that there is no showing that the representation was made for the purpose of having it repeated to plaintiffs to influence their conduct. See Rest., Torts, § 533. I find it unnecessary to consider either of these arguments. The conduct complained of here was allegedly intentionally fraudulent and not negligent. As to the second argument, the requirements of § 533 are not embodied

in § 536. Comment a to the latter Section states:

"In the situation dealt with in this Section the controlling *factor is* the purpose of the legislature and not that of the person making the report. * * *"

Defendants complain that the complaint "states no specific fact and circumstances indicating specific intent to deceive." Aside from the fact that § 536 contains no such requirement, Rule 9(b) provides:

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

■ The allegation in Paragraph 49 that *defendants' conduct "constituted intentional* fraud upon plaintiffs" is clearly sufficient to satisfy the requirement of the Rule. Cf. Consumers Time Credit, Inc. v. Remark Corp., at al., 227 F.Supp. 263 (E.D.Pa., 1964).

■ Defendants argue further that the complaint fails to show that the plaintiffs were actually deceived. The whole burden of the complaint here is that they *were* deceived, and that that is the whole reason for the suit. There may be strong factual arguments that can be made to a fact-finder to induce a contrary conclusion, but a *motion to dismiss under Rule* 12 is not the place to make them. Finally, defendants argue that the claims of Harry Kirschenbaum, Louis Kirschenbaum and Anne Hiller lack jurisdictional amount. Count I is, of course, based upon a federal question, i. e., a cause of action arising out of the violation of a federal statute, while Count II is based upon the assertion of a common law right. The former is not plainly unsubstantial, and the latter may remain here on the doctrine of pendent jurisdiction even though it lacks jurisdictional amount.

In Taussig v. Wellington Fund, Inc., 313 F.2d 472 (C.A.3, 1963), the court said, at page 475:

"* * * The leading cases on pendent jurisdiction hold that an actual right to relief under some federal statute need not be established to justify adjudication of the merits of a coupled common-law claim. Hurn v. Oursler, 1933, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148; Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 1938, 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195. The common-law claim must be dismissed only if the coupled federal contention is 'plainly unsubstantial either because obviously without merit, or "because its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy."' Levering & Garrigues Co. v. Morrin, 1933, 289 U.S. 103, 105–106, 53 S.Ct. 549, 550, 77 L.Ed. 1062. See also Bell v. Hood, 1946, 327 U.S. 678, 681–683, 66 S. Ct. 773, 90 L.Ed. 939. * * *"

For the foregoing reasons, the motion to dismiss Count II will be denied.

Defendants' motion to have plaintiffs join all defendants named in Count I as co-defendants under Count II, and to require plaintiffs to file and serve an amended complaint adding said defendants under Count II is denied.

■ If *the unnamed defendants are* liable under Count II, their liability is joint and several. They would not be necessary parties and plaintiffs cannot be compelled to amend their complaint. Rumig v. Ripley Mfg. Corp., 9 F.R.D. 467 (E.D.Pa., 1949). See 3 Moore's Federal Practice ¶ 19.07 (1963 ed.). Cf. Humphrey v. Stanolind Oil & Gas Co., 232 F.2d 925 (C.A.5, 1956).

### ORDER

And now, April 16, 1964, it is ordered as follows:

1. The motions of Bargain City, U.S. A., Inc., William H. Sylk, Harry S. Sylk, Lawrence G. Horowitz, Michael Criss,

Mary T. Kehan and Leon Blauner to strike the complaint and for a more specific complaint are denied.

2. The motions of all defendants to dismiss the complaint under Rule 12(b) for failure to state a cause of action are denied.

3. The motion of defendants to dismiss as to plaintiffs Harry Kirschenbaum, Louis Kirschenbaum and Anne Hiller for lack of jurisdiction is denied.

4. The motion of defendants Bargain City, U.S.A., et al., to compel plaintiffs to join all defendants named in Count I as co-defendants under Count II is denied.