W. Kent COCHRAN, on behalf of himself and other stockholders of Agricultural Insurance Company, Plaintiff,

v.

CHANNING CORPORATION, Kenneth S. Van Strum, George Carleton, Jr. and John K. Colgate, Defendants.

United States District Court
S. D. New York.
Nov. 15, 1962.

Guggenheimer & Untermyer, New York City, for plaintiff. Alfred Berman, New York City, of counsel.

Milbank, Tweed, Hope & Hadley, New York City, for defendants. William E. Jackson, New York City, of counsel.

DAWSON, District Judge.

This is a motion by defendant Channing Corporation (Channing) and three of its directors named as individual defendants to dismiss the complaint for failure to state a claim upon which relief can be granted. Rule 12(b) (6) of the Federal Rules of Civil Procedure.

Plaintiff Cochran, suing on his behalf and on behalf of other stockholders of Agricultural Insurance Company (Agricultural), alleges two causes of action. The first is based upon a violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder by the Securities and Exchange Commission.* The second cause

* "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

   *     *     *     *     *

"(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may

of action realleges the same operative facts and claims a violation of New York State law.

For the purposes of this motion the factual allegations of the complaint are to be taken as true and the motion must be denied unless it is clear from the complaint that the plaintiff would not be entitled to any relief. Arfons v. E. I. DuPont de Nemours & Company, 261 F.2d 434 (2d Cir.1958); Dioquardi v. Durning, 139 F.2d 774 (2d Cir.1944); 2 Moore, Federal Practice ¶12:08, pp. 2244–45 (2d ed. 1961).

The facts alleged by plaintiff and accepted as true for the purposes of this motion are as follows:

The complaint is purportedly brought under Section 10(b) of the Securities Exchange Act of 1934 (par. 1), by plaintiff, a stockholder of Agricultural Insurance Company since November of 1958, allegedly suing in behalf of himself and others similarly situated (pars. 2, 3). Defendant Channing Corporation is a company which is claimed to have dominated the policies of Agricultural since January 1961 (pars. 4, 7). The individual defendants are alleged to be directors of both Channing and Agricultural, two of the three having been such throughout the time covered by the complaint (pars. 5, 7).

In substance, it is claimed that since 1960 Channing and the individual defendants have engaged in a scheme aimed at acquiring for Channing ownership of Agricultural's shares at the lowest possible price, and at utilizing its control for the purpose of (1) realizing on an equity in excess of prevailing market prices for Agricultural's shares, and (2) causing Agricultural's insurance agents to engage, in behalf of a Channing wholly-owned sales subsidiary, in the retail sale of shares of mutual funds managed by Channing (par. 8).

It is further alleged that to effectuate this scheme Channing carried out a program of purchase of Agricultural's shares, withholding from the public any disclosure of its identity or of its program, and that after it had become the dominant stockholder of Agricultural, it caused the formation of a new company, Exchequer, Incorporated (herein "Exchequer") and caused Agricultural's directors to recommend to the latter's stockholders the exchange of their shares for shares of Exchequer, although the directors knew that if the proposal were accepted by holders of approximately 15%, defendants would thereby acquire majority control of Agricultural, while Exchequer would continue under the domination and control of the individual defendants and other persons associated with them in control of Channing (pars. 9, 15).

The complaint further alleges that as a result of its undisclosed purchasing program, Channing acquired as of March, 1961, in excess of 50,000 shares of Agricultural's stock (par. 10); that Agricultural's directors, dominated by defendants, reduced the quarterly dividend of Agricultural on March 9, 1961, the defendants desiring that reduction in order to facilitate Channing's purchasing program and their alleged plan (pars. 11–12); and that as a result Channing acquired further shares at depressed prices (pars. 13–14).

prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j.

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

(1) to employ any device, scheme, or artifice to defraud,

(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security." Rule 10b–5, Securities and Exchange Commission.

It is then alleged that because of the dividend reduction and lack of information as to Channing's program of purchases, plaintiff in or about the first week of April, 1961, sold some 500 shares of Agricultural's stock which he would not otherwise have sold, at a price reflecting the depressing effect of the dividend reduction, and a price below what he (and other stockholders) could have obtained later after disclosure of Channing's purchasing program and the contemplated exchange with Exchequer (pars. 16–19). There are allegations that the acts and course of business of the defendants involved the use of the mails and instrumentalities of interstate commerce (par. 20) and that they were in violation of Section 10(b) of the Securities Exchange Act and Rule 10b–5 (par. 21); that plaintiff did not know of the course of conduct until shortly prior to the institution of the action (par. 23) and that plaintiff has been damaged in the sum of $8,000 (par. 24).

The second count of the complaint (pars. 25, 26) substantially repeats the allegations of the first count, except that it omits those relating to violation of Section 10(b) and Rule 10b–5 and instead alleges that the various acts set forth were violations of the fiduciary duties owed by Channing as dominant stockholder and the individual defendants as directors.

Defendant attacks the first cause of action on two grounds: (1) that Section 10(b) and Rule 10b–5 require privity of contract and the plaintiff has not alleged that the shares he sold were purchased by the defendants, and (2) that even if privity had been alleged, the acts of defendants do not constitute a violation of the Securities Exchange Act because there were no verbal misrepresentations made by defendants to plaintiff.

█ Assuming, arguendo, that privity is not necessary, does the conduct of defendants amount to a violation of Rule 10b–5? The rule is addressed to any person and not merely to insiders. However, since its construction has imposed special burdens upon insiders, it is necessary to determine the status of these defendants. There can be no question that the three directors of Agricultural were insiders as to the affairs of the corporation. Moreover it must be taken as true, as asserted in the complaint, that defendant Channing was in a position to, and in fact did, dominate the policies of Agricultural and must therefore be deemed an insider.

█ There have been very few suits against corporate insiders but what little authority there is supports the position that a controlling shareholder is to be treated similarly to a director or officer. Speed v. Transamerica Corp., 71 F. Supp. 457 (D.C.Del.1947) (on motion for summary judgment), 99 F.Supp. 808 (D. C.Del.1951) (on the merits); James Blackstone Memorial Library Assn. v. Gulf, Mobile & Ohio R. R. Co., 264 F.2d 445 (7th Cir.1959), cert. denied, 361 U.S. 815, 80 S.Ct. 56, 4 L.Ed.2d 62; Loss, Securities Regulation (2d ed. 1961) at p. 1450.

If the allegation of plaintiff were merely that defendant Channing did not disclose its identity and its insider position in the purchase of the securities, this Court would be obliged to rule upon a question that has long intrigued commentators and members of the bar specializing in corporate securities work.

"In short, all that can be safely said in the present state of the law is that an insider cannot be certain that failure to disclose his identity will *not* be considered a violation of Rule 10b–5, or at the very least will not be more likely to lead courts to find a violation when the non-disclosure of identity is considered in connection with all the other circumstances." 3 Loss, Securities Regulation (2d ed. 1961) at p. 1465.

In the instant case the complaint charges more than a simple failure to disclose the identity of the purchaser. It alleges that as part of the scheme to increase its holdings of Agricultural the defendants caused a reduction of the divi-

dend so as to depress the price of the stock. Plaintiff relies upon this affirmative act in support of the complaint.

The fact that the defendants did not make any statements at all does not, in and of itself, deprive plaintiff of relief. The three subsections of Rule 10b–5 are in the disjunctive, and while subsection (2) seems to require a statement of some sort, subsections (1) and (3) do not. One who causes a reduction of dividend in order more cheaply to purchase the shares of a corporation is most certainly employing a device to defraud and is engaging in a course of business which operates as a fraud upon the seller of those securities.

In Kardon v. National Gypsum Company, 73 F.Supp. 791 (E.D.Pa.1947) all the stock of a corporation was owned by the two plaintiffs and the two defendants. The plaintiffs sold their stock to the defendants and later charged a violation of Rule 10b–5 when they learned that the defendants had had a prior agreement with a third party to sell the bulk of the corporate assets. In the course of the opinion the court said:

> "Under any reasonably liberal construction, these provisions [Section 10(b) and Rule 10b–5] apply to directors and officers who, in purchasing the stock of the corporation from others, fail to disclose a fact coming to their knowledge by reason of their position, which would materially affect the judgment of the other party to the transaction." 73 F. Supp. 798, at p. 800.

In the instant case defendants not only failed to disclose a material fact (the true reason for the cut in the dividend rate) but were themselves responsible for its very existence.

Even more in point is Speed v. Transamerica Corp., 99 F.Supp. 808 (D.C.Del. 1951). Transamerica was the majority shareholder of Axton-Fisher, a corporation with a large volume of tobacco inventory. The true value of the inventory was much greater than that listed on the books of the company because of the accounting technique that requires inventory to be listed at the lower of cost or market. Recognizing this Transamerica bought the shares of minority holders of Axton-Fisher with the idea in mind of eventually dissolving the subsidiary and distributing the assets. The court there stated:

> "The rule is clear. It is unlawful for an insider, such as a majority stockholder, to purchase the stock of minority stockholders without disclosing material facts affecting the value of the stock, known to the majority stockholder by virtue of his inside position but not known to the selling minority stockholders, which information would have affected the judgment of the sellers. The duty of disclosure stems from the necessity of preventing a corporate insider from utilizing his position to take unfair advantage of the uninformed minority stockholders." 99 F.Supp. 808, at pp. 828–829.

The Securities Exchange Act was enacted in part to afford protection to the ordinary purchaser or seller of securities. Fraud may be accomplished by false statements, a failure to correct a misleading impression left by statements already made or, as in the instant case, by not stating anything at all when there is a duty to come forward and speak. It is the use of the inside information that gives rise to a violation of Rule 10b–5. See Matter of Cady, Roberts & Co., Securities Exchange Act Release No. 6668 at p. 4 (November 8, 1961). Lack of communication between defendant and plaintiff does not eliminate the possibility that Rule 10b–5 has been violated.

The other contention raised by defendant is more troublesome. There is no privity of contract between the plaintiff seller and the defendant. There is an allegation of reliance on the reduced dividend rate as indicative of depleted value and sale of the stock based on that reliance.

Defendant seeks support from Joseph v. Farnsworth Radio & Television Corp., 99 F.Supp. 701 (S.D.N.Y.1951), aff'd per curiam, 198 F.2d 883 (2d Cir. 1952). Plaintiff in that case charged that insiders had sold stock of the company without disclosing its true economic condition and that they had made misrepresentations concerning the company that caused the price to remain high. Plaintiffs further alleged that they bought some of this stock but at a period in time when the defendants had ceased to sell. Therefore there was no direct privity of contract between the parties. It was not alleged that plaintiffs had relied in any way upon the false statements distributed by defendants. Judge Sugarman of this court granted defendants' motion to dismiss, stating:

"A semblance of privity between the vendor and purchaser of the security in connection with which the improper act, practice or course of business was invoked seems to be requisite * * *." 99 F.Supp. 701, at p. 706.

Plaintiffs were given leave to amend the complaint to allege that they had relied on the false statements of defendants but instead they appealed unsuccessfully to the Court of Appeals.

Fischman v. Raytheon Mfg. Co., 188 F.2d 783 (2d Cir.1951) supports the contention that strict privity of contract is not necessary to allow recovery. The court there held that an action under Rule 10b–5 could be maintained by common shareholders who had purchased stock relying on a false registration statement put out for the issuer's preferred stock.

In a similar vein is Texas Continental Life Ins. Co. v. Bankers Bond Co., 187 F.Supp. 14 (W.D.Ky.1960), rev'd on other grounds, 307 F.2d 242 (6th Cir.1962). Plaintiff purchased bonds from third parties in reliance upon false statements in a prospectus chargeable to defendant. The court stated:

"The defendants argue strenuously that the plaintiff should be denied recovery because there was no privity between the plaintiff and the defendants at the time of the sale. The court is of the opinion that such a fact is not material under the statute. Rule X–10B–5 admits of no such loophole but on the contrary speaks if the duties and obligations of the seller. * * *

"The defendants cite in support of their contention, among other cases, the case of Joseph v. Farnsworth Radio & Television Corp., D.C., 99 F.Supp. 701. This was a case in which the complaint was dismissed for failure to state a cause of action. The court did say a semblance of privity between vendor and purchaser of securities seems to be requisite. At best, that is not a very strong statement and indicates some doubt in the mind of the court." 187 F.Supp. 14, at pp. 24–25.

Perhaps the most accurate comment on the current state of the law was made by Judge Herlands of this court in Brown v. Bullock, 194 F.Supp. 207 (S.D.N.Y.1961). The case itself does not directly concern Rule 10b–5 but Judge Herlands nevertheless addressed himself to its application.

"Privity of contract between the plaintiffs and the defendants is not a fixed condition precedent to the implication of a private remedy for a statutory violation that injured the plaintiffs, members of the protected class. In that situation, privity is not an ultimate or operative fact. It is an evidentiary fact to be considered in conjunction with other material facts in determining whether the relationship (such as it is) between the plaintiffs and the defendants and the nature of the particular acts and transactions involve the duty created by the statute." 194 F.Supp. 207, at pp. 229–230.

For the purposes of this motion all that need be determined is whether plaintiff has alleged a claim upon which

relief can be granted. If plaintiff is able to prove at trial each and every allegation asserted in the complaint then the fact that there is no privity of contract does not amount to a fatal defect of proof. To the extent that the plaintiff falls short in his proof, the lack of privity between the parties will be one factor that will have to be taken into account. The complaint cannot be dismissed on the first cause of action at this juncture.

█ The second cause of action reasserts the same facts and charges a violation of state law. Plaintiff does not claim that it meets the test for diversity jurisdiction and rests upon the doctrine of pendent jurisdiction. Defendants oppose the applicability of pendent jurisdiction because of the absence of any substantial federal claim in the prior cause of action. Since this contention has been ruled upon adversely to defendants it follows that this cause of action is properly before the court.

█ One final assertion of defendants remains for disposition. Defendants claim that even if this court has jurisdiction, under applicable state law there is no possibility of recovery by the plaintiff and that the cause of action should be dismissed under Rule 12(b) (6) of the Rules of Civil Procedure.

Plaintiff leans heavily upon Von Au v. Magenheimer, 126 App.Div. 257, 110 N. Y.S. 629 (2d Dept. 1908) in support of its contention that the facts alleged assert a good cause of action under applicable state law. It is agreed that since Agricultural is a New York corporation that state's law is the proper one to look to. Mayflower Hotel Stockholders Protective Committee v. Mayflower Hotel Corp., 89 U.S.App.D.C. 171, 193 F.2d 666, 668–669 (1951); Zahn v. Transamerica Corp., 162 F.2d 36, 40 (3d Cir.1947).

The Von Au case, supra, is in some respects factually similar to the instant one. There too the defendants were accused of reducing the dividend rate to coerce the plaintiff into selling her shares of stock. However, the plaintiff sold her stock to the defendants instead of to third parties and there were verbal misrepresentations made by the defendants to the plaintiff. Both are lacking in the instant case.

Turning first to the question of whether concealment as opposed to verbal misrepresentation is actionable in New York, the Court of Appeals for this circuit has long since laid that issue at rest. In Lesnik v. Public Industrial Corporation, 144 F.2d 968 (2d Cir.1944) the court interpreted New York law in an analogous factual setting. Defendant corporation charged in a counterclaim that certain of the plaintiffs had injured it in the following manner: Defendant was a holding company for the securities of other corporations; it had gone through a reorganization under Section 77B of the Bankruptcy Act and had both secured and unsecured creditors. The secured creditors held preferred stock of Hightstown Corporation as collateral for the indebtedness of defendant. Defendant's only chance of recovery was conditioned on Hightstown's regular payment of dividends so that defendant could reduce and eventually eliminate its obligations.

The counterclaim alleged that the board of directors of Hightstown refused to pay any dividends on its preferred stock with the intention of placing defendant in dangerous financial straits. The directors of Hightstown then bought up the outstanding debts of defendant through dummies. Demand was made upon the defendant and when payment was not forthcoming the dummies sold the collateral to the directors and brought suit for the balance. The district court dismissed the counterclaim on the merits and an appeal was taken from that decision. The Court of Appeals reversed and had this to say concerning the difference between overt misstatements and mere concealment:

" * * * While this case [Von Au v. Magenheimer, 126 App.Div. 257, 110 N.Y.S. 629, 636, affirmed without opinion 196 N.Y. 510, 89 N.E. 1114] shows that New York has not

adopted the strict rule of absolute disclosure by a director purchasing stock, it has adopted the intermediate or 'special facts' rule, which, among other things, prevents active concealment, as well as active fraud, by a director. Cf. Strong v. Repide, 213 U.S. 419, 29 S.Ct. 521, 53 L.Ed. 853; 11 Wis.L.Rev. 547; 9 Miss. L.J. 427, 443–454; 27 Yale L.J. 731; cf. 32 Yale L.J. 637.

" * * * If Davison, Gabrielson, and Wolfe intentionally withheld dividends here for the purpose of breaking up the Public Industrials reorganization and acquiring the Hightstown stock, it would surely be such an affirmative act for which they must be held liable * * *." 144 F.2d 968, at pp. 977–978.

The same sort of active concealment is alleged in the instant case. It is asserted that the reduction of the dividend rate was for the concealed purpose of forcing the stockholders into falsely thinking that the company was in financial difficulty. But the Lesnik case, supra, involved a purchase by the directors. The corporation as pledgor of the stock was a proper party to seek redress as to the depression in value of the collateral. The plaintiff in the instant case must surmount an additional obstacle. Does New York permit a wronged shareholder to maintain a cause of action against directors who did not purchase the shares that plaintiff was coerced into selling?

A leading case assaulting the citadels of privity is the decision by Judge Cardozo in Ultramares Corp. v. Touche, 255 N.Y. 170, 174 N.E. 441, 74 A.L.R. 1139 (1931). Defendant was an accounting firm that had prepared financial statements for its client, Fred Stern & Co., Inc. (Stern). The plaintiff was shown these statements and in reliance thereon lent the company money. When Stern was unable to pay the plaintiff back, the accountant was sued because of the false statements that it had prepared. There was, of course, no privity of contract between the creditor-plaintiff and the accountant.

The court held that the lack of contractual privity was a bar to a suit based on negligence; but the cause of action asserting fraud was upheld as proper. The plaintiff, although unknown to the accountant, was among the class of persons who could be expected to rely on the fraud of defendant. In the instant case, if the dividend was reduced only to depress the price of the stock, then plaintiff, as a stockholder, was in the class of persons expected to rely on the reduction as evidence of decreased valuation.

The Court of Appeals, Second Circuit, has interpreted New York law as stating that there is no difference between active concealment and active fraud by a director. Lesnik v. Public Industrial Corporation, supra. Ultramares, supra, holds that when fraud is alleged direct privity need not be shown. Putting the two cases together this Court is constrained to hold that the plaintiff has asserted a good cause of action under New York State law. The facts alleged in the complaint charge defendants with an active concealment that is legally the exact equivalent of active fraud in its traditional posture; it is alleged that the fraud by defendants was intended to, and in fact did, deceive plaintiff into parting with his stock when disclosure of the truth would have dictated a different course of action.

The motion of the defendants as to each cause of action must be and hereby is denied.

So ordered.