Maurice **SHAPIRO** et al., Plaintiffs,

v.

**MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED**, et al., Defendants.

No. 70 Civ. 3653.

United States District Court, S. D. New York.

Dec. 26, 1972.

Wolf, Popper, Ross, Wolf & Jones, New York City, for plaintiffs; Howard L. Jacobs, New York City, of counsel.

Brown, Wood, Fuller, Caldwell & Ivey, New York City, for defendant Merrill Lynch and the individual defendants.

Shearman & Sterling, New York City, for defendants Investors Management Co., Inc., City Associates and Fairfield Partners.

Coudert Brothers, New York City, for defendants J. M. Hartwell & Co., J. M. Hartwell & Co., Inc., Hartwell and Associates, and Park Westlake Associates.

Milbank, Tweed, Hadley & McCloy, New York City, for defendant Van Strum & Towne, Inc..

Seward & Kissel, New York City, for defendants A. W. Jones & Co., and A. W. Jones Associates.

Debevoise, Plimpton, Lyon & Gates, New York City, for defendants Burden Investors Services, Inc. and William A. M. Burden & Co.

Oliver C. Biddle, Philadelphia, Pa., for defendant Madison Fund, Inc.; Baker, Nelson, Williams & Mitchell, New York City, of counsel.

## OPINION

TENNEY, District Judge.

■ This is a civil action for money damages arising out of defendants' alleged violations of §§ 10(b) and 15(c)(1) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78o(c)(1) (1970), Rules 10b-5 and 15c1-2 promulgated thereunder by the Securities and Exchange Commission, and § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q (1970). Plaintiffs have moved this court, pursuant to Fed.R.Civ.P. 23(c), for an order declaring that this action be maintained as a class action. Defendants, in turn, have moved the court for a judgment on the pleadings on the grounds that plaintiffs have failed to state a claim upon which relief can be granted. For the reasons set out below, both plaintiffs' and defendants' motions are denied in all respects.[1]

## DEFENDANTS' MOTION

■ Ordinarily, the defense of failure to state a claim upon which relief can be granted is asserted either in a responsive pleading or by motion prior to a responsive pleading. Fed.R.Civ.P. 12(b). When defendant fails to avail himself of either of these procedures, Rule 12(h)(2) permits the defense to be raised in a motion for judgment on the pleadings pursuant to Rule 12(c). However, even though the 12(b)(6) defense is asserted through the procedural device of a 12(c) motion, the standards employed in determining the motion will be the same as if the defense had been raised prior to the closing of the pleadings. 5 Wright and Miller, Fed.Prac. and Proc.: Civil § 1367, at 688–89 (1969). Consequently, the well-pleaded material facts as alleged in plaintiffs' complaint will be taken as admitted for the purposes of defendants' motion. 2A J. Moore, Fed.Prac. ¶ 12.08 (2d ed. 1968).

### Facts

The allegedly fraudulent transactions upon which plaintiffs base their complaint involved trading of Douglas Aircraft Company (hereinafter "Douglas") common stock on the New York Stock Exchange (hereinafter "NYSE"). (Subsequent to the relevant time period, Douglas merged with the McDonnell Company to form the McDonnell-Douglas Corporation, which has not been named as a party to this action.)

From about April 1966 through July 1966 defendant Merrill Lynch, Pierce, Fenner & Smith, Inc. (hereinafter "Merrill Lynch") had been engaged as the prospective managing underwriter of a proposed Douglas offering of $75,000,000 in convertible subordinated debentures. When the registration statement for the offering was approved on July 12, 1966, Merrill Lynch became the acting managing underwriter.

1. Neither plaintiffs nor defendants have briefed the motion to dismiss as it applies to the claims asserted under §§ 15(c)(1) and 17(a). Accordingly, the motion to dismiss as to these claims is denied without further comment by this Court.

On or about June 7, 1966, Douglas released an earnings report for the first five months of its 1966 fiscal year. This report indicated that Douglas had earned 85 cents per share of common stock for that period. The complaint alleges that sometime during the period of June 17 through June 22, 1966, defendant Merrill Lynch and its then employees Lenz, Sedlmayer, Martin, Shinn, Catapano, McMillen, Woodman, Heindel, Bilbao, and Idelman (hereinafter collectively referred to as the "individual defendants"), came into possession of certain nonpublic and material information that was the exclusive property of Douglas; that such information was given to Merrill Lynch solely as a result of its position as prospective underwriter for the Douglas bond issue; that both Merrill Lynch and the individual defendants knew, or should have known, that the information was confidential and the sole property of Douglas, and that it was not to be used for any purposes of their own. This confidential information consisted of the following:

(a) that Douglas would report sharply lower earnings for the first six months of its fiscal year 1966 than it had for the first five months of that year;

(b) that Douglas had sharply reduced its estimate of earnings for the 1966 fiscal year and that it now expected to have little or no profit for that year; and

(c) that Douglas had substantially reduced its projection of earnings for its 1967 fiscal year.

The complaint further alleges that from about June 20 through June 24, 1966, defendant Merrill Lynch and the individual defendants divulged this information to the following parties, all of whom were customers of Merrill Lynch: Investors Management Company, Inc. (a wholly-owned subsidiary of Anchor Corporation), Madison Fund, Inc., J. M. Hartwell & Co. (whose business has been succeeded to by J. M. Hartwell & Co., Inc.), Hartwell Associates, Park Westlake Associates, Van Strum & Towne, Inc., Fleschner Becker Associates, A. W. Jones & Co., A. W. Jones Associates, City Associates, Fairfield Partners, Burden Associates, and William A. Burden & Co. (hereinafter referred to collectively as the "selling defendants"). Plaintiffs claim that all of the selling defendants knew, or should have known, that this information was confidential and the sole property of Douglas.

During the period of June 20 through June 23, 1966, the selling defendants either sold from existing positions or effected short sales of more than 165,000 shares of Douglas common stock on the New York Stock Exchange. These sales were made prior to public disclosure of the revised earnings information by Douglas on June 24, 1966, and without disclosure of the information to plaintiffs and other purchasers of Douglas stock during that period of time. As a result of these sales, both the individual defendants and Merrill Lynch received commissions from the execution of the selling defendants' orders and also received compensation in the form of customer directed "give-ups" (i. e., division of commissions earned by other brokers executing orders for the selling defendants).

On June 23, 1966, plaintiff Gibson purchased an unspecified number of shares of Douglas common stock on the NYSE. On June 24, 1966, Douglas issued a report containing the revised earnings information. On the same morning, plaintiffs M. Shapiro, I. Shapiro, Naigles, and Saxe purchased an unspecified number of shares of Douglas common stock on the NYSE. All of these plaintiffs claim that defendants have defrauded them by withholding material inside information; that had they known of the information which defendants possessed they would not have purchased Douglas stock; that as a result of these acts plaintiffs have sustained substantial losses.

The following is a table of prices of Douglas common stock on the NYSE for all relevant dates.

| Date | Volume | High | Low | Closing Price |
|------|--------|------|-----|---------------|
| June 21 | 66,200 | 90 | 86 | 86¼ |
| June 22 | 66,500 | 90½ | 87½ | 87½ |
| June 23 | 261,500 | 88¾ | 77⅝ | 78¾ |
| June 24 | 211,100 | 77 | 74½ | 76 |
| June 25 | | SATURDAY | | |
| June 26 | | SUNDAY | | |
| June 27 | 121,300 | 74⅜ | 69 | 69 |
| June 28 | 135,300 | 70 | 66¼ | 68½ |
| June 29 | 102,200 | 69⅞ | 64⅛ | 64⅜ |
| June 30 | 180,900 | 65¼ | 61 | 63⅛ |
| July 1 | 100,400 | 64⅞ | 61 | 61¾ |

Since a determination of whether plaintiffs are entitled to an order declaring a valid class action will not be necessary if plaintiffs have not stated a cause of action, defendants' motion to dismiss will be considered first.

## THE 10b-5 CLAIM

Plaintiffs' claim, in essence, is (1) that the selling defendants, by trading in Douglas common stock without disclosing the material inside information divulged to them by Merrill Lynch and the individual defendants, have violated § 10(b) and Rule 10b-5 and thus are liable in damages to plaintiffs (and to the members of their proposed class), and (2) that defendant Merrill Lynch and the individual defendants, by divulging this material inside information to the selling defendants for the purpose of protecting their investments in Douglas stock, have violated § 10(b) and Rule 10b-5 and thus are liable in damages to plaintiffs (and to the members of their proposed class).

There is considerable disagreement among both the courts and the commentators as to what the requisite elements of a 10b-5 cause of action are.[2] Those

elements which have most often been determined as necessary are: misrepresentation or nondisclosure, materiality, scienter, privity, reliance and causation. 2 A. Bromberg, Securities Law: Fraud, SEC Rule 10b-5 § 8.1 (1971).

### Standing to Sue

Before proceeding, however, to examine the various elements in detail, plaintiffs must first establish their standing to sue under the "purchaser-seller" doctrine first enunciated in this Circuit in Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2d Cir.), cert. denied, 343 U. S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952). There, plaintiff, a minority shareholder of defendant Newport Steel Corp., claimed that he was defrauded by various misrepresentations made by defendant regarding a merger between Newport and the Wilport Company. Suit was brought under § 10(b) and Rule 10b-5 even though plaintiff had not purchased or sold any Newport stock. It was plaintiff's contention that Rule 10b-5 should be construed to include actions for breach of fiduciary duty by corporate insiders. The court disagreed, holding:

"[S]ection [10b] was directed solely at that type of misrepresentation or fraudulent practice usually associated with the sale or purchase of securities rather than at fraudulent mismanagement of corporate affairs, and that Rule X-10B-5 extended protection only to the defrauded purchaser or seller." 193 F.2d at 464.

Although the "Birnbaum rule" has been questioned by the commentators,[3] and modified by the courts,[4] the Second Circuit, in the recent case of Drachman v. Harvey, 453 F.2d 722 (2d Cir. 1971), rev'd and remanded en banc, 453 F.2d 736, 738 (2d Cir. 1972), has re-

---

2. See, e. g., Note, S.E.C. Rule 10b–5: A Recent Profile, 13 William & Mary L. Rev. 860 (1972), for a summary of the various elements considered by the courts.

3. See, e. g., W. Painter, Federal Regulation of Insider Trading, 284 (1968).

4. See, Note, S.E.C. Rule 10b–5: A Recent Profile, 13 William & Mary L.Rev. 860, 900–26 (1972) for an analysis of these cases.

fused to repudiate the "purchaser-seller" requirement.

■ It should be noted that the "*Birnbaum* rule" contains two proscriptions: (1) that the fraud be of the type that is usually associated with the purchase or sale of securities, and (2) that the protection of Rule 10b-5 is extended only to the defrauded purchaser or seller. The first of these proscriptions delineates the standing requirement, with which this portion of the opinion is concerned; the second is concerned with the elements of privity and causation, discussed *infra*.

Defendants urge this court that five previous decisions in this district arising out of precisely the same acts alleged in plaintiffs' complaint (Shulof v. Merrill Lynch, Pierce, Fenner & Smith, Inc., CCH Fed.Sec.L.Repr. ¶ 93,147 (S.D.N.Y. June 15, 1971); Smachlo v. Merrill Lynch, Pierce, Fenner & Smith, Inc., CCH Fed.Sec.L.Repr. ¶ 93,148 (S.D.N.Y. May 18, 1971); Hirsh v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 311 F. Supp. 1283 (S.D.N.Y.1970); Sanders v. Merrill Lynch, Pierce, Fenner & Smith, Inc., CCH Fed.Sec.L.Repr. ¶ 93,226 (S.D. N.Y. June 29, 1970); Baehr v. Merrill Lynch, Pierce, Fenner & Smith, Inc., CCH Fed.Sec.L.Repr. ¶ 93,227 (S.D.N.Y. June 29, 1970)), all of which dismissed their respective complaints on the grounds of failure to meet the "purchaser-seller" requirement, are dispositive of defendants' motion. Notwithstanding the similarity between these cases and the one at bar, the previous decisions are readily distinguishable.

In four out of the five cases cited by defendants (*Smachlo, Hirsch, Sanders,* and *Baehr*) not one of the plaintiffs purchased or sold any shares of Douglas common stock during the period of time between the alleged trading violations and public disclosure of Douglas' revised earnings report. In each of these cases, plaintiffs became shareholders of Douglas stock prior to the allegedly violative trading and the essence of their complaints was that had the defendants disclosed the inside informa-

tion, plaintiffs, too, would have sold their stock in an effort to minimize the losses which occurred following public disclosure. In the case *sub judice*, however, plaintiffs each allege purchases of Douglas concurrent with or subsequent to defendants' allegedly fraudulent acts and prior to public disclosure.

The fifth case, *Shulof*, more closely approaches the facts before this court. Plaintiff there was both a holder of Douglas stock *and* a purchaser of Douglas stock within the relevant time period. The court dismissed the complaint on the grounds, *inter alia*, that the requisites of the "*Birnbaum* rule" had not been met. Defendants in the instant case have cited to a portion of that opinion as indicating that plaintiff in *Shulof*, as a purchaser of Douglas stock, did not meet the "purchaser-seller" requirement:

> "[T]he alleged fraud by defendant's customers involved sales by them in which plaintiff had no part, and as a result the alleged fraud is not actionable by this plaintiff." CCH Fed. Sec.L.Repr. ¶ 93,147, at 91,134.

Defendants, however, have conveniently omitted the two previous sentences and taken the quotation out of context:

> "While it is true that plaintiff claims to have ultimately sold his shares and may have purchased shares during the period in which there was trading on undisclosed inside information (the complaint is ambiguous on this point), *the claim of fraud in connection with nondisclosure is that defendant's customers were able to sell at a higher price than plaintiff could have sold after the disclosure was made; the claim is not that plaintiff was defrauded by the nondisclosure into purchasing such shares as he may have bought before June 24. The plaintiff in short does not claim to have been injured as a purchaser by the nondisclosure; his claim is rather that he was injured as a seller who received a lower price than the defendant's favored customers.* However, the alleged fraud by defendant's customers

involved sales by them in which plaintiff had no part, and as a result the alleged fraud is not actionable by this plaintiff." CCH Fed.Sec.L.Repr. ¶ 93,147, at 93,134. (Emphasis added.)

■ Upon a reading of the entire excerpt, it is clear that the court did not make its finding with respect to plaintiff as a purchaser, but rather as a *holder* of Douglas stock who had made no transactions as either a purchaser or seller of securities during the relevant time period. In fact, all of the cases cited to by defendants dismissed their respective complaints for a lack of standing under the *"Birnbaum* rule". Since plaintiffs in the instant case purchased stock concurrent with or subsequent to the alleged fraud and prior to public disclosure, they clearly have standing to sue. Indeed, defendant's own cited case of Hirsh v. Merrill Lynch, Pierce, Fenner & Smith, Inc., *supra*, 311 F.Supp. 1283, presaged the holding of this Court:

"[R]ecognition of the *Birnbaum* purchaser-seller limitation will not result in this case in a novel or [atypical] scheme being declared immune from judicial review and allowed to frustrate the Securities Act intention of preventing inequitable and unfair practices on securities exchanges. At least those purchasers of Douglas stock during June 20, 1966 to June 24, 1966 satisfy its requisites for standing." 311 F.Supp. at 1289.

### *Materiality*

■ It is undisputed that a prime requisite of any 10b-5 action is that the information withheld or misrepresented must be material. *See, e. g.*, Radiation Dynamics, Inc. v. Goldmuntz, 464 F.2d 876, 887 (2d Cir. 1972). The Second Circuit in List v. Fashion Park, Inc., 340 F.2d 457 (2d Cir.), cert. denied, 382 U.S. 811, 86 S.Ct. 23, 15 L.Ed.2d 60 (1965), stated the test of materiality:

"The basic test of 'materiality,' . . . is whether 'a reasonable man would attach importance [to the fact misrepresented] in determining his choice

of action in the transaction in question.' "

\* \* \* \* \* \*

" 'Materiality' encompasses those facts 'which in reasonable and objective contemplation might affect the value of the corporation's stock or securities. . . .' Kohler v. Kohler Co. . . ." 340 F.2d at 462 (citations omitted).

This test was later confirmed and expanded in S.E.C. v. Texas Gulf Sulphur Co., 401 F.2d 833 (2d Cir.), cert. denied, Coates v. S.E.C., 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1968).

"Thus, material facts include not only information disclosing the earnings and distributions of a company but also those facts which affect the probable future of the company and those which may affect the desire of investors to buy, sell, or hold the company's securities." 401 F.2d at 849.

■ In the case *sub judice*, the information withheld by defendants was that Douglas' earnings would drop from 85 cents to 12 cents per share (a decline of over 85%); that Douglas anticipated little or no profit for the fiscal year; and that the earnings projected for the next fiscal year were substantially lower. There is no question that this is information which "may affect the desire of investors to buy . . . the company's securities." *See, e. g.*, Weitzen v. Kearns, 271 F.Supp. 616, 619 (S.D. N.Y.1967).

### *Scienter*

This Circuit, in Fischman v. Raytheon Mfg. Co., 188 F.2d 783, 786 (2d Cir. 1951), held that "proof of fraud is required in suits under § 10(b) . . . and Rule X-10B-5 . . . ." However, in S.E.C. v. Texas Gulf Sulphur Co., *supra*, 401 F.2d 833, this rule was relaxed:

"[W]hether the case before us is treated solely as an SEC enforcement proceeding, or as a private action, proof of a specific intent to defraud is unnecessary."

"[T]he implementation of a standard of conduct that encompasses negligence as well as active fraud comports with the administrative and the legislative purposes underlying the Rule." 401 F.2d at 854–855.

Recently, however, the Second Circuit indicated that negligence alone would not satisfy the scienter requirement and that a 10b-5 claim would not be stated

"in the absence of allegation of facts amounting to scienter, intent to defraud, reckless disregard for the truth, or knowing use of a device, scheme or artifice to defraud. It is insufficient to allege mere negligence." Shemtob v. Shearson, Hammill & Co., 448 F.2d 442, 445 (2d Cir. 1971).

█ This Court finds that, under the allegations of fact contained in the complaint, plaintiffs have demonstrated the required scienter. Defendant Merrill Lynch was acting in a confidential capacity as managing underwriter of the Douglas bond issue when it received the information. It knew that the information was the exclusive property of Douglas. The individual defendants, as employees of Merrill Lynch, were aware of this special relationship and knew, or should have known, of the confidential nature of the information. The selling defendants were likewise aware, or should have been aware, of the confidential nature of both Merrill Lynch's relationship with Douglas and the information. The sequence of events alleged in the complaint, and the materiality of the information, ineluctably leads to the conclusion that all defendants acted with the knowledge that buyers of Douglas stock on the NYSE would not be in possession of such material information and, hence, acted with the intent to take advantage of that ignorance. Plaintiffs' allegations, therefore, meet the scienter requirement. *See* Heit v. Weitzen, 402 F.2d 909, 914 (2d Cir. 1968), cert. denied, 395 U.S. 903, 89 S. Ct. 1740, 23 L.Ed.2d 217 (1969).

We come now to the heart of defendants' motion: that defendants did not cause plaintiffs' injury. The defense is inductively constructed as follows: (1) plaintiffs were not in privity of contract with defendants, *i. e.*, plaintiffs have not alleged that they actually purchased defendants' shares; (2) plaintiffs, who thus had no prior or contemporaneous knowledge of defendants' transactions, would have purchased their stock even if defendants had not sold theirs; (3) therefore, defendants did not induce plaintiffs to buy any stock and, hence, did not cause plaintiffs' damage. The foregoing is, of course, but a mere synopsis of defendants' more complex argument, the details of which will be discussed *infra*. This Court, however, is of the opinion that defendants have misconstrued the meaning of causation in 10b-5 actions and finds that plaintiffs' complaint has alleged facts sufficient to establish causation.

█ Several commentators have suggested that the "in connection with" phrase of § 10(b) and Rule 10b-5 is the source of the causation requirement. 2 A. Bromberg, Securities Law, Fraud-SEC Rule 10b-5, § 8.7(1) 1971); VI L. Loss, Securities Regulation, 3875 (1969). Whatever its source, there is no doubt that causation is a necessary element of a 10b-5 private damage action. Affiliated Ute Citizens v. United States, 406 U.S. 128, 154, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); Chasins v. Smith, Barney & Co., 438 F.2d 1167, 1172 (2d Cir. 1970); Crane Co. v. Westinghouse Air Brake Co., 419 F.2d 787, 797 (2d Cir. 1969), cert. denied, 400 U. S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50 (1970); Globus v. Law Research Service, Inc., 418 F.2d 1276, 1291 (2d Cir. 1969), cert. denied, 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970); Vine v. Beneficial Finance Co., 374 F.2d 627, 635 (2d Cir. 1967); Colonial Realty Corp. v. Brunswick Corp., 337 F.Supp. 546, 551 (S.D.N.Y.1971); Hirsh v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,

supra, 311 F.Supp. 1283, 1289 (S.D.N.Y. 1970).

Defendants' first contention, that plaintiffs have failed to allege privity with defendants, raises the question of whether privity is a necessary element of a 10b-5 damage action, or whether causation may be established despite a lack of privity. The early cases in this circuit, which required at least a "semblance of privity" between purchaser and seller in a 10b-5 action, see, e. g., Joseph v. Farnsworth Radio & Television Corp., 99 F.Supp. 701, 706 (S.D.N.Y.1951), aff'd, 198 F.2d 883 (2d Cir. 1952), supply some authority for defendants' position.

The first explicit indication that a lack of privity was not fatal to a 10b-5 action appeared in Cochran v. Channing Corp., 211 F.Supp. 239 (S.D.N.Y.1962). Plaintiff claimed that he was defrauded into selling his stock in a corporation because defendant, who maintained control of the corporation's board of directors, had reduced the dividend on the stock as part of a plan to depress its price and thus facilitate acquisition of the stock. Defendant contended, inter alia, that since plaintiff failed to allege that defendant actually purchased the shares he sold, plaintiff failed to state a cause of action. The court, relying in part on Fischman v. Raytheon Mfg. Co., supra, 188 F.2d 783 (2d Cir. 1951), held:

"If plaintiff is able to prove at trial each and every allegation asserted in the complaint then the fact that there is no privity of contract does not amount to a fatal defect of proof. To the extent that the plaintiff falls short in his proof, the lack of privity between the parties will be one factor that will have to be taken into account." 211 F.Supp. at 245.

Subsequent to the Cochran decision, several cases in the Second Circuit, although not explicitly stating that privity is not required, have sustained claims under 10b-5 where there was no direct transaction between plaintiff and defendant. Crane Co. v. Westinghouse Air

Brake Co., supra, 419 F.2d 787; Heit v. Weitzen, supra, 402 F.2d 909; Vine v. Beneficial Finance Co., supra, 374 F. 2d 627; Astor v. Texas Gulf Sulphur Co., 306 F.Supp. 1333 (S.D.N.Y.1969). This view is shared by other circuits. In Reynolds v. Texas Gulf Sulphur Co., 309 F.Supp. 548 (D.Utah 1970), aff'd sub nom., Mitchell v. Texas Gulf Sulphur Co., 446 F.2d 90 (10th Cir.), cert. denied, 404 U.S. 1004, 92 S.Ct. 564, 30 L.Ed. 2d 558 (1971), reh. denied, 404 U.S. 1064, 92 S.Ct. 734, 30 L.Ed.2d 754 (1972), the court said:

"While it is not necessary for [plaintiff] to establish privity of contract in order to recover [under 10b-5], and the fact that there was a total nondisclosure would not prevent recovery if some form of manipulation was involved, it nevertheless is necessary for [plaintiff] to prove some causative effect." 309 F.Supp. at 558.

The Tenth Circuit, in affirming Reynolds, held:

"Perhaps the first step is to realize that the common law requirement of privity has all but vanished from 10b-5 proceedings while the distinguishable 'connection' element is retained." 446 F.2d at 101.

■ It is clear, therefore, that a lack of privity between plaintiff and defendant is not sufficient to warrant dismissal of the complaint and that causation is an independent element capable of establishment notwithstanding such lack of privity. While privity may be an indication of the required "connection", Cochran v. Channing Corp., supra, 211 F. Supp. at 245, it is certainly not determinative of such requirement and an absence of privity will not defeat an otherwise properly pleaded 10b-5 complaint.

■ The next line of inquiry is, then, have plaintiffs properly alleged causation? The allegations contained in plaintiffs' complaint may be organized into three groups: (1) allegations as to the identity and nature of the parties; (2) allegations concerning the materiality of the information and defendants' failure

to divulge the information to plaintiffs; (3) an allegation that plaintiffs would not have purchased Douglas stock had they had access to the information which defendants possessed. It may fairly be noted that only the last allegation seems to contain any semblance of causative terminology. Defendants, however, contend that the proper test of causation is whether plaintiffs were in any way induced by the defendants' transactions to purchase their stock, or in other words, would plaintiffs still have made their stock purchases if defendants had refrained from trading? It is the court's opinion that not only have defendants improperly stated the test of causation, but that under the latest ruling of the Supreme Court in Affiliated Ute Citizens v. United States, *supra,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 no allegations other than those of materiality and omission are necessary to establish causation in a nondisclosure case under Rule 10b-5.

▆▆ Defendants' first premise in their scheme of causation is that plaintiffs must show that defendants' acts proximately caused plaintiffs' injury. Although this proposition may find some authority in the early case of Smith v. Bear, 237 F.2d 79 (2d Cir. 1956), subsequent decisions in this Circuit and in the Supreme Court have held the necessary connection to be "causation in fact." *See, e. g.,* Affiliated Ute Citizens v. United States, *supra,* 406 U.S. 128, 154, 92 S.Ct. 1456, 31 L.Ed.2d 741; Chasins v. Smith, Barney & Co., *supra,* 438 F.2d 1167, 1172; Vine v. Beneficial Finance Co., *supra,* 374 F.2d 627, 635.

In List v. Fashion Park, Inc., *supra,* 340 F.2d 457, the Second Circuit designated the concept of "reliance" as sufficient evidence of causation in 10b-5 damage actions.

> "[T]he test of 'reliance' is whether 'the misrepresentation is a substantial factor in determining the course of conduct which results in [the recipient's] loss.' . . . [T]he reason for this requirement . . . is to certify that the conduct of the de-

fendant actually caused the plaintiff's injury.

> "[T]o abandon the requirement of reliance would be to facilitate outsiders' proof of insiders' fraud. . . . But this strikes us as an inadequate reason for reading out of the rule so basic an element of tort law as the principle of causation in fact." 340 F.2d at 462–463.

Applying the concept of reliance to the facts in *List*, which involved primarily a nondisclosure of material information by the purchaser of plaintiff's stock, the court formulated the following test:

> "The proper test is whether the plaintiff would have been influenced to act differently than he did act if the defendant had disclosed to him the undisclosed fact." 340 F.2d at 463.

Having met the *List* test of reliance, plaintiffs have, *a fortiori,* certified "that the conduct of the defendant actually caused the plaintiff's injury."

▆▆ Even if, however, the complaint did not include an allegation of reliance or causation, plaintiffs would still have properly pleaded a 10b-5 cause of action. In Affiliated Ute Citizens v. United States, *supra,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741, the Supreme Court eliminated proof of reliance as a prerequisite to recovery in a 10b-5 case involving nondisclosure. Plaintiffs in *Ute Citizens* were holders of stock in the Ute Development Corporation (hereinafter "UDC"). The shares represented, in essence, each holder's interest in the assets of the Ute Tribe to be distributed, under the Ute Partition Act, to the mixed blood members of the Tribe. These shares were deposited with the First Securities Bank (hereinafter "Bank") under an agreement between the Bank and UDC. The complaint alleged, *inter alia,* that two employees of the Bank, in arranging for sales of these shares to non-members of the Tribe, failed to disclose to the holders material facts pertaining to their position as market makers and to the true value of the shares, all in violation of Rule 10b-5. The court, reversing the Court of Appeals' holding that no recov-

ery could be had without a showing of reliance, said:

"Under the circumstances of this case, involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision. . . . *This obligation to disclose and this withholding of a material fact establish the requisite element of causation in fact.*" 406 U.S. at 153–154, 92 S.Ct. at 1472. (Citations omitted.) (Emphasis added.)

■ It may be argued that *Ute Citizens* is distinguishable from the instant case since the transactions in question there did not take place on a national securities exchange and, instead, were essentially face-to-face. It is this Court's belief, however, that it is not the character of the transaction (*e. g.*, face-to-face, third party, national exchange) which is dispositive, rather it is the determination that a defendant is obligated to disclose information to a plaintiff which is critical. This duty arises when one in possession of material inside information decides to trade or recommend the securities concerned. S.E.C. v. Texas Gulf Sulphur Co., supra, 401 F.2d 833, 848.

■ In a face-to-face transaction it is easy to conclude that a buyer (or seller) has the duty to disclose to his particular seller (or buyer). The situation is more difficult when the transactions take place on a national securities exchange. There, it is virtually impossible for an investor to predict who will match his buy or sell order. But to conclude, however, that these circumstances warrant abandonment of the duty to disclose is antithetical to the purposes of § 10(b) and Rule 10b-5, which are "to prevent inequitable and unfair practices and to insure fairness in securities transactions generally, whether conducted face-to-face, over the counter, or on exchanges. . . ." S.E.C. v. Texas Gulf Sulphur Co., supra, 401 F.2d 833, 848.

■ Therefore, this Court finds that defendants, who were trading on an essentially anonymous market, were obligated to disclose the information in their possession to *all* potential investors trading in the same market, including plaintiffs and the members of their proposed class. It may very well be that for transactions in market places such as the New York Stock Exchange, where the number of potential investors is almost unlimited, some form of publication of the information intended to reach the entire investing public is required. It is not necessary for this Court to reach that issue because the complaint alleges that defendants made absolutely no attempt to disclose to plaintiffs or any member of their class. Since plaintiffs have established defendants' obligation to disclose a material fact and that defendants have failed to do so, they have satisfied the causation requirement. Affiliated Ute Citizens v. United States, *supra,* 406 U.S. 128, 154, 92 S.Ct. 1456, 31 L.Ed. 2d 741.

Finally, because the issue in the instant case is a question of first impression, this Court feels compelled to respond to defendants' motion to dismiss with a greater degree of particularity than might otherwise be necessary. Defendants' strongest objection to plaintiffs' complaint is the following:[5]

---

5. Defendants have also attempted to draw upon Shulof v. Merrill Lynch, Pierce, Fenner & Smith, Inc., *supra,* CCII Fed. Sec.L.Repr. ¶ 93,147, for support of their position. They contend that *Shulof* may be read to require that plaintiffs prove that defendants' acts actually induced plaintiffs to purchase their stock. This is an incorrect reading of that case. The court did state that plaintiff there did not allege that defendant's fraud induced him to purchase shares he would not otherwise have purchased, and that consequently plaintiff failed to state a cause of action. As discussed in the text, *infra,* the fraud is not, as defendants would have this Court rule, the act of trading in Douglas stock. The essence of the fraud was the nondisclosure of material information when defendants chose to make

"[T]he theory of [plaintiffs'] complaint must be that if Merrill Lynch disclosed material non-public information concerning Douglas to *any* defendant who thereafter sold *any* Douglas stock, Merrill Lynch, and such defendant, would be liable to all persons throughout the world who purchased Douglas stock during the same general period of time without knowledge of such information. In other words, if such defendant sold 100 shares of stock during a period when 500,000 shares were traded, then, according to the theory of the complaint, both Merrill Lynch and its customer would be responsible not only to the purchaser of those 100 shares, but to the purchasers of the remaining 499,900 shares. . . . "

\* \* \* \* \* \*

"The defendants would in all events be liable to all persons anywhere who lost money in their investment in Douglas stock during the period in which a wrongful sale allegedly occurred. This theory, we submit, is contrary to reason, and to the weight of authority." (Defendants' Memorandum of Law in Support of Motion, pp. 6–7.)

This position has also been expounded in several Law Review articles.

"A seller on a national exchange has never been granted recovery from an insider who purchased his shares without making any representations or disclosures. In a face-to-face transaction, a seller who knows he is dealing with an insider can be said to have relied on the insider's implicit representation that there was no undisclosed material information. On a national exchange, however, even this form of reliance is impossible because the identity of the buyer and seller are never known to each other. *Furthermore, since the seller would presumably have sold to another buyer even if the insider had fulfilled his duty under the*

*Act by not trading, it cannot be said that the insider's violation of the Act damaged the seller.*" (Emphasis added.) Note, 80 Harv.L.Rev. 468, 475 (1966).

"The illegal presence of an insider in the market in no way affects the amount of information available to outsiders. In this sense, what the outsider does not know does not hurt him; insider trading is totally unrelated to his decision-making process.

"When disclosure is made, the resulting price adjustment must occur whether there has been insider trading or not. *Because the loss is not caused by the violation, there is no compensatory interest in awarding damages to individual investors where the rule has been violated by insider trading. Thus, no action for damages should lie.*" (Emphasis added.) Comment, *Fashioning a Lid For Pandora's Box: A Legitimate Role For Rule 10b-5 In Private Actions Against Insider Trading on a National Stock Exchange,* 16 U.C.L.A. L.Rev. 404, 409–10 (1969).

*See also,* Note, 83 Harvard L.Rev. 1421, 1423–24 n. 14 (1970) ; Note, Civil Liability under Section 10(b) and Rule 10b-5: A Suggestion for Replacing the Doctrine of Privity, 74 Yale L.J. 658, 675–76 (1965) ; Painter, Federal Regulation of Insider Trading 125 (1968).

On first consideration, these arguments are highly persuasive. It is indeed alien to our concept of tort law to compensate an injured party for damages not caused by the defendant's acts. But under defendants' theory, defendants would not be liable even to an actual purchaser of their shares, since even that purchaser, having been unaware of defendants' transactions, would have completed his transaction with another if the defendants had not traded. Furthermore, to permit recovery by such an individual on the basis of a fortuitous

their sales. Thus, employing the proper conception of defendants' fraudulent acts, plaintiffs have alleged that defendants'

fraud "induced" them to purchase shares they would not otherwise have purchased.

match of defendants' sell order and that individual's buy order is to reduce a private 10b-5 damage suit to a game of roulette. Thus, defendants' position leads to an equally repugnant result: that defendants' conduct has harmed no one and, hence, that any insider who trades on a national securities exchange is insulated from liability to any individual investor. Of course, the fact that defendants' position does not appeal to this Court is not, of itself, sufficient rebuttal. Defendants' argument does, however, contain a defect of a more substantial nature.

This defect is contained in the basic premise of defendants' argument: that regardless of whether defendants traded or abstained from trading, plaintiffs would still have purchased the Douglas stock. As an abstract proposition that statement is undoubtedly true. Plaintiffs had no knowledge of defendants' transactions and it logically follows that plaintiffs' decision to purchase Douglas stock would have been unaffected had defendants' abstained from any transactions. But therein lies the fallacy of defendants' reasoning: it is not the act of trading which causes plaintiffs' injury, *it is the act of trading without disclosing material inside information which causes plaintiffs' injury*. Had Merrill Lynch and the individual defendants refrained from divulging the earnings information to the selling defendants, or had the selling defendants decided not to trade, there would have been no liability for plaintiffs' injury due to the eventual public disclosure of Douglas' poor financial position. But defendants did not choose to follow that course of action, and by trading in Douglas stock on a national securities exchange they assumed the duty to disclose the information to all potential buyers. It is the breach of this duty which gives rise to defendants' liability.

The case at bar is not unlike the so-called "good samaritan" cases. If a defendant observes a man drowning in a lake, there is no duty imposed on the defendant to come to his aid. Thus, even if the man drowns, no liability is imposed on the defendant. If, on the other hand, the defendant gets into a boat, rows over to the man, extends his hand in an effort to pull him out, and then withdraws his hand, the law will hold him liable for the man's death. W. Prosser, Handbook of the Law of Torts, § 38, at 188 (2d ed. 1955). Although the defendant may argue that the man would have drowned in any event, the voluntary decision to begin the rescue attempt created a duty to complete the attempt, and the breach of that duty has injured the plaintiff. Expressing it in more abstract terms, the defendant, by performing an act which he was not otherwise obligated to perform, created a duty to perform further acts which he was previously not obligated to observe.

An analogous situation is before the court in the instant case. Plaintiffs, and all members of their proposed class, were in peril of being damaged by the ultimate disclosure of Douglas' poor earnings forecast. Defendants, who were in possession of the earnings information, were under no obligation to "save" plaintiffs from the impending injury. Nevertheless, once the decision to trade in Douglas stock was made, § 10(b) and Rule 10b-5 imposed a duty upon them to disclose the material inside information in their possession. Having breached that obligation, the defendants are liable for plaintiffs' injuries.

The analogy is, of course, imperfect. It is quite obvious that releasing one's hold on a drowning man "causes" his death. On the other hand, it is not quite so obvious what effect a failure to disclose information has upon potential investors. Indeed, it may be that it would have had no effect at all. Nonetheless, *all* investors trading on the same market as defendants had the right to evaluate the information withheld before making their investment decisions. Insiders' acts of nondisclosure have forced the courts to fashion a test of materiality which can only predict the probable effect such information would have had upon plaintiffs. Notwithstand-

ing the imprecision inherent in this test, the Supreme Court has declared that proof of materiality and a failure to disclose will establish the requisite causation. Affiliated Ute Citizens v. United States, *supra*, 406 U.S. 128, 153–154, 92 S.Ct. 1456, 31 L.Ed.2d 741.

■ There remains the question of whether the nature of defendants' participation in the alleged fraud, to wit, as non-trading "tippers" and trading "tippees", in any way diminishes their liability. Although this Court can find no decisions in either this or any other Circuit directly in point, there are several cases which indicate a negative answer.

In S.E.C. v. Texas Gulf Sulphur Co., *supra*, 401 F.2d 833, 852, 856, the Second Circuit held that two "tippers" violated § 10(b) and Rule 10b–5 by divulging material inside information to others, who, in turn, traded in Texas Gulf Sulphur securities on the basis of that information. On remand, the district court held one of the "tippers" liable for the profits of his "tippees". S.E.C. v. Texas Gulf Sulphur Co., 312 F.Supp. 77, 95 (S.D.N.Y.1970), modified on appeal, 446 F.2d 1301 (2d Cir.), cert. denied, 404 U.S. 1005, 92 S.Ct. 561, 30 L.Ed.2d 558 (1971), reh. denied, 404 U.S. 1064, 92 S.Ct. 733, 30 L.Ed.2d 753 (1972). Although that case was an S.E.C. enforcement action, this Court can find no reason why the same rationale should not apply to a private damage suit.

There appears to be equally persuasive authority in support of "tippees'" liability. The court in *Texas Gulf Sulphur*, while not presented with the question of "tippees'" liability, made the following often quoted observation:

"As Darke's 'tippees' are not defendants in this action, we need not decide whether, if they acted with actual or constructive knowledge that the material information was undisclosed, their conduct is as equally violative of the Rule as the conduct of their insider source, though we note that it certainly could be equally reprehensible." 401 F.2d at 852.

In addition, this district court, in Ross v. Licht, 263 F.Supp. 395 (S.D.N.Y.1967), held:

"If [defendants] were not insiders, they would seem to have been 'tippees' . . . and subject to the same duty as insiders." 263 F.Supp. at 410.

Therefore, this Court finds that the selling defendants, or "tippees", who, the complaint alleges, knew or should have known of the confidential nature of the information, are liable to the same extent as insiders.

*Purchases Subsequent to Douglas News Release of June 24, 1966*

On the morning of June 24, 1966, Douglas released the revised earnings forecast to the public. The announcement was carried over the Dow Jones news ticker prior to the opening of the New York Stock Exchange. Neither plaintiff nor defendant has indicated exactly, or approximately, what time the news was carried over the ticker.

■ There is no doubt that those investors who purchased Douglas stock after public dissemination of the new earnings report do not have a cause of action against defendants. A question arises, however, as to just when such dissemination is accomplished. It is rather doubtful that disclosure is instantaneously achieved upon release of the information to the press.

"[W]e note in passing that, where the news is of a sort which is not readily translatable into investment action, insiders may not take advantage of their advance opportunity to evaluate the information by acting immediately upon dissemination." S.E.C. v. Texas Gulf Sulphur Co., *supra*, 401 F.2d at 854 n. 18.

This Court, however, has been deprived of an opportunity to determine at what time full public disclosure was effected, since it has not been furnished sufficient data. Conceivably, the news ticker could have carried Douglas' press release at one minute prior to the opening of the exchange and plaintiffs M.

Shapiro, I. Shapiro, Naigles and Saxe could have placed their orders at one minute after the opening. It could not be said, in that event, that full disclosure had been achieved within two minutes of its release.

Therefore, and for the foregoing reasons, defendants' motion to dismiss the complaint is denied as to *all* plaintiffs, with leave given to renew the motion as to plaintiffs M. Shapiro, I. Shapiro, Naigles and Saxe upon presentation of sufficient facts to enable the Court to make a proper determination.

## PLAINTIFFS' MOTION

Plaintiffs seeks to maintain this action "on their own behalf and on behalf of all other purchasers of Douglas Aircraft . . . common stock from June 21, 1966 through June 24, 1966 similarly situated," and have moved this Court for an appropriate order pursuant to Fed. R.Civ.P. 23(c)(1). For the reasons set out below, the motion must be denied at this time.

 Defendants vigorously oppose the motion on the grounds that, *inter alia*, (1) cases of nondisclosure are not appropriate actions to be maintained on behalf of a designated class, (2) that four of the named plaintiffs purchased their stock after full public disclosure was effected by Douglas, and (3) that the remaining plaintiff cannot represent the class because his is an atypical claim. While it is possible that defendants' arguments (1) and (3) may have been deprived of any vitality by the recent Supreme Court decision in Affiliated Ute Citizens v. United States, *supra*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741, the problem presented by defendants' argument (2) affects not only the four named plaintiffs, but the definition of the entire class. In the event that this Court determined that the action was to be maintained as a class action, it would not be possible, under the facts presented to this Court by the pleadings, to determine the parameters of that class. It is fairly certain that the members of such a class would include those purchasers of Douglas stock who completed their transactions between June 21 and June 23, 1966. However, it is not possible, as indicated in the preceding section of this opinion, to determine at what time full disclosure was effected. Since, in the opinion of this Court, that time would mark the outer boundary of any class defined for the purposes of this suit, and since such a determination is not possible on the facts before this Court, plaintiffs' motion is denied with leave to renew at such time as facts sufficient to accomplish a proper disposition of the motion are presented.

So ordered.